# 23-6536

## United States Court of Appeals for the Second Circuit

RALPH HALL,

*Plaintiff-Appellant,*

v.

GREEN HAVEN CORRECTIONAL FACILITY; GENERAL CORRESPONDENCE DEPARTMENT; PACKAGE ROOM DEPARTMENT; UNNAMED CORRECTIONAL OFFICER, STAFF; DEPUTY SUPERINTENDENT FOR SECURITY; INMATE GRIEVANCE PROGRAM; CENTRAL OFFICE REVIEW COMMITTEE,

*Defendants,*

NEW YORK STATE ATTORNEY GENERAL OFFICE,

*Amicus Curiae.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR NEW YORK STATE ATTORNEY GENERAL OFFICE

LETITIA JAMES
  *Attorney General*
  *State of New York*

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
STEPHEN J. YANNI
  *Assistant Solicitor General*
  *of Counsel*

Attorney for Amicus Curiae
28 Liberty Street
New York, New York 10005
(212) 416-6184

Dated: August 4, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................ii

PRELIMINARY STATEMENT AND
    INTEREST OF AMICUS CURIAE ....................................................... 1

ISSUE PRESENTED ................................................................................ 3

STATEMENT OF THE CASE ................................................................. 3

STANDARD OF REVIEW....................................................................... 7

SUMMARY OF ARGUMENT ................................................................. 7

ARGUMENT

    THE DISTRICT COURT CORRECTLY DENIED IFP STATUS AND
    DISMISSED THE COMPLAINT UNDER 28 U.S.C. § 1915(G)....................... 9

    A.    Hall Has Three Strikes. .......................................................... 9

        1.    The district court's 2007 dismissal of *Hall v. City of
            New York* and this Court's dismissal of the appeal
            in the same case count as two strikes. .............................. 9

        2.    The 2010 dismissal of *Hall v. New York State
            Supreme Court* does not qualify as a strike, but Hall
            has an additional strike from a 2003 dismissal not
            considered by the district court. ...................................... 12

    B.    Alternatively, Collateral Estoppel Precludes Hall from
        Relitigating Whether He Has Three Strikes.......................... 15

CONCLUSION ...................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Akassy v. Hardy,*
    887 F.3d 91 (2d Cir. 2018) ...................................................................... 19

*AmBase Corp. v. City Investing Co. Liquidating Tr.,*
    326 F.3d 63 (2d Cir. 2003) ...................................................................... 13

*Andrew v. Cervantes,*
    493 F.3d 1047 (9th Cir. 2007) ................................................................ 16

*Bank of N.Y. v. First Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010) .................................................................... 16

*Blakely v. Wards,*
    738 F.3d 607 (4th Cir. 2013) .................................................................. 14

*Burns v. Schell,*
    No. 20-3883, 2023 WL 1113215 (2d Cir. Jan. 31, 2023) ..................... 11

*Cannon v. New York State Dep't of Corr. & Cmty. Supervision,*
    No. 23-cv-0837, 2023 WL 2898665 (S.D.N.Y. Apr. 10, 2023)............. 13

*Clay v. Lee,*
    828 F. App'x 24 (2d Cir. 2020) ............................................................... 14

*Collazo v. Pagano,*
    656 F.3d 131 (2d Cir. 2011) .................................................................... 10

*Conseillant v. William,*
    No. 23-cv-5816, 2023 WL 5237615 (S.D.N.Y. Aug. 14, 2023) ........... 14

*Cotton v. Noeth,*
    96 F.4th 249 (2d Cir. 2024)..................................................... 7-8, 10, 12

*Daker v. Jackson,*
    942 F.3d 1252 (11th Cir. 2019) .............................................................. 19

ii

**Cases**                                                                              **Page(s)**

*DeLeon v. Doe,*
  361 F.3d 93 (2d Cir. 2004) .................................................................. 18

*Escalera v. Samaritan Vill.,*
  938 F.3d 380 (2d Cir. 2019) ......................................................... 12, 17

*Faulkner v. National Geographic Enters. Inc.,*
  409 F.3d 26 (2d Cir. 2005) .................................................................. 17

*Fourstar v. Garden City Grp., Inc.,*
  875 F.3d 1147 (D.C. Cir. 2017) .......................................................... 18

*Greathouse v. Meddaugh,*
  No. 22-2834, 2023 WL 5439456 (2d Cir. Aug. 24, 2023) .................... 11

*Griffin v. Carnes,*
  72 F.4th 16 (2d Cir. 2023).......................................................... 9-11, 14

*Hillis v. All Personal Liab. Carriers-Underwriters of Land,*
  No. 23-47, 2023 WL 4004488 (2d Cir. 2023) ..................................... 16

*Kaminski v. Kennedy,*
  No. 22-2084, 2024 WL 1664771 (2d Cir. Apr. 18, 2024) ......... 11, 13-14

*Laaman v. United States,*
  973 F.2d 107 (2d Cir. 1992) ................................................................ 17

*Lomax v. Ortiz-Marquez,*
  590 U.S. 595 (2020)............................................................................. 14

*Lucien v. Jockisch,*
  133 F.3d 464 (7th Cir. 1998) .............................................................. 19

*Mills v. Fischer,*
  645 F.3d 176 (2d Cir. 2011) ............................................................... 10

*Montana v. United States,*
  440 U.S. 147 (1979)............................................................................. 17

| Cases | Page(s) |
|---|---|

*Ortiz v. McBride*,
380 F.3d 649 (2d Cir. 2004) ................................................................ 19

*Patel v. Contemporary Classics of Beverly Hills*,
259 F.3d 123 (2d Cir. 2001) ................................................................ 14

*Pitts v. South Carolina*,
65 F.4th 141 (4th Cir. 2023) ............................................................... 18

*SEC v. Monarch Funding Corp.*,
192 F.3d 295 (2d Cir. 1999) ................................................................ 17

*Shepherd v. Keyser*,
No. 21-cv-2363, 2021 WL 1842159 (S.D.N.Y. May 7, 2021).......... 16-17

*Stagg, P.C. v. U.S. Department of State*,
983 F.3d 589 (2d Cir. 2020) ................................................................ 16

*Tafari v. Hues*,
473 F.3d 440 (2d Cir. 2007) ................................................................ 14

*Teichmann v. New York*,
769 F.3d 821 (2d Cir. 2014) ................................................................ 12

## Federal Statute

28 U.S.C. § 1915(g) ..................................................................... 1, 4, 11

## Miscellaneous Authorities

18A Charles Alan Wright et al., *Federal Practice & Procedure*
§§ 4435-4436 (3d ed. May 2025 update) ............................................ 16

DOCCS, *Incarcerated Lookup*,
https://nysdoccslookup.doccs.ny.gov/ (last visited Aug. 4, 2025) ....... 15

## PRELIMINARY STATEMENT AND
## INTEREST OF AMICUS CURIAE

The "three strikes" rule of the Prison Litigation Reform Act precludes a prisoner from bringing a civil action in forma pauperis (IFP) after accumulating three dismissals for frivolousness, maliciousness, or failure to state a claim. 28 U.S.C. § 1915(g). Applying this rule, the U.S. District Court for the Southern District of New York (Swain, C.J.) determined that plaintiff-appellant Ralph Hall has at least three strikes, denied him IFP status, and dismissed his complaint. Because the district court dismissed the complaint before it was served on the named defendants, they have not been made parties to the case and are not represented by the Office of the New York State Attorney General (OAG). Accordingly, this Court has no power to rule adversely to defendants; it can only either affirm the dismissal or vacate it and remand the case to the district court for further proceedings where defendants may assert any available defenses. Nonetheless, OAG has an institutional interest in the correct administration of the three-strikes rule and submits this brief as amicus curiae at this Court's invitation.

This Court should affirm the judgment of dismissal, because Hall has three strikes under § 1915(g). The 2007 dismissal of *Hall v. City of*

*New York* counts as a strike because the court provided qualifying grounds for dismissing all claims, even though *Heck v. Humphrey*, 512 U.S. 477 (1994), separately barred the action. This Court's dismissal of Hall's appeal as frivolous in the same case provides a second strike. Hall is correct that the 2010 dismissal of *Hall v. New York State Supreme Court* does not count as a strike because, in declining to exercise supplemental jurisdiction over a state-law claim, the court rendered a "mixed dismissal." But Hall has one additional strike from a 2003 dismissal on which the district court did not rely and thus has three strikes in total. This Court can either take judicial notice of that 2003 dismissal and affirm on this alternate ground, or remand for the district court to consider that potential strike.

Alternatively, this Court may affirm based on collateral estoppel. A prior, unchallenged order in a 2013 case determined that Hall had accumulated three strikes and was therefore barred from IFP status under § 1915(g). Hall's argument that a district court may never rely on a prior judicial determination finding three strikes to deny IFP status in a later case relies on inapposite cases addressing a separate issue: those cases hold that a court dismissing a case may not also make a binding

2

determination that the dismissal constitutes a strike. But Hall cites no authority, and we are aware of none, holding that a prior judicial determination that a plaintiff has *previously* incurred three strikes lacks any preclusive effect.

## ISSUE PRESENTED

Whether the district court properly denied Hall IFP status and dismissed his complaint under 28 U.S.C. § 1915(g).

## STATEMENT OF THE CASE

Plaintiff-appellant Ralph Hall is an individual incarcerated at Green Haven Correctional Facility in New York. He filed the underlying complaint pro se in the Southern District of New York. The complaint asserted claims under 42 U.S.C. § 1983 against Green Haven and its officials based on the alleged mishandling of Hall's incoming mail. (Appendix (A.) 4-13.) Hall requested to proceed IFP without prepayment of the requisite filing fee. (A. 15.)

The district court denied Hall IFP status and dismissed the complaint without prejudice. (A. 16.) The court observed that another judge of the same court had previously determined (in 2013) that Hall is

barred from proceeding IFP under the "three strikes" rule of the Prison

Litigation Reform Act, 28 U.S.C. § 1915(g), which provides:

> In no event shall a prisoner bring a civil action or appeal
> a judgment in a civil action or proceeding under this sec-
> tion if the prisoner has, on 3 or more prior occasions,
> while incarcerated or detained in any facility, brought an
> action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious
> physical injury.

Because a court had already determined in 2013 that Hall had at least

three strikes under the statute and because he did not show that he was in

imminent danger of serious physical injury, he was barred from proceed-

ing IFP. (A. 15.)

The 2013 ruling on which the district court relied (from which Hall

never appealed) counted three dismissals as strikes under § 1915(g).

(A. 127-128 (2013 three-strikes ruling); *see* A. 122 (order to show cause

identifying relevant dismissals).)

The first strike was the 2007 dismissal of *Hall v. City of New York*,

No. 07-cv-3051 (S.D.N.Y.). (A. 66-70.) In that case, Hall asserted constitu-

tional claims against a state judge, a county prosecutor, and the City of

New York related to his criminal trial and conviction. The court dismissed

4

the claims against the judge and the prosecutor based on absolute immunity and dismissed the claims against the City for failure to plausibly allege municipal liability. Alternatively, the court explained that the complaint must be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994), because Hall's claims turned on the invalidity of his conviction yet his direct appeal still remained pending. (A. 66-69.)

The second strike was this Court's 2007 dismissal of Hall's appeal in the same case. This Court denied Hall's motion to proceed IFP on appeal and dismissed his appeal as frivolous, holding that "it lack[ed] an arguable basis in law or in fact." (A. 75.)

The third strike was the 2010 dismissal of *Hall v. New York State Supreme Court*, No. 10-cv-4044 (S.D.N.Y.). (A. 106-112.) In that case, Hall asserted federal and state claims against a state court and a law firm representing Hall's former attorneys in a malpractice action he had brought against them. Hall alleged that the law firm improperly obtained an extension of time in which to answer the complaint, thereby avoiding default judgment. (A. 106-108.) The court determined that the *Rooker-Feldman* doctrine barred Hall's attempt to obtain federal court review of the state court's decision. (A. 108-110.) The court also concluded that

5

Eleventh Amendment immunity barred Hall's claims against the state court, and that the law firm was not a state actor subject to liability under § 1983. (A. 110-111.) In denying Hall's subsequent motions for reconsideration, the court further held that it would decline to exercise supplemental jurisdiction over Hall's state-law claim against the law firm under New York Judiciary Law § 487. (A. 119.)

The court that issued the 2013 three-strikes ruling also referenced the 2003 dismissal of *Hall v. Pataki*, No. 00-cv-781 (N.D.N.Y.), but declined to decide whether that dismissal qualified as a strike because Hall had (falsely) asserted he was not the plaintiff in that case. (A. 122 n.2; see *infra* at 14-15.) In *Pataki*, Hall challenged a proposed DNA sampling policy for incarcerated individuals. The court granted defendants' motion for judgment on the pleadings because the complaint failed to state a claim. Report-Recommendation & Order at 4, *Pataki*, No. 00-cv-781 (Feb. 13, 2003) ("*Pataki* R&R"), ECF No. 41 (reproduced in Addendum at 10-17), *adopted by* Order, *Pataki* (N.D.N.Y. Mar. 14, 2003), ECF No. 42 (reproduced in Addendum at 18-19). Alternatively, the court found that Eleventh Amendment immunity barred Hall's claims and that defendants were entitled to qualified immunity. *Id.* at 5-7.

6

After Hall appealed from the district court's order in this case denying him IFP status, this Court appointed pro bono counsel and directed counsel to brief, among any other issues, whether the 2007 and 2010 district court dismissals qualify as strikes under § 1915(g). The Court also invited OAG to submit a brief as amicus curiae. Order (Nov. 15, 2024), ECF No. 69.

## STANDARD OF REVIEW

This Court reviews the district court's denial of IFP status de novo. *Cotton v. Noeth*, 96 F.4th 249, 255 (2d Cir. 2024).

## SUMMARY OF ARGUMENT

The district court correctly denied Hall IFP status because he has at least three strikes under § 1915(g).

The 2007 dismissal of *City of New York* qualifies as a strike. Although the court's determination that *Heck* required dismissal does not support a strike, *see Cotton*, 96 F.4th at 258, the court gave independent, qualifying grounds for dismissing each claim, including absolute immunity and failure to state a claim. Separately, this Court's 2007 dismissal

7

of Hall's appeal in the same case for frivolousness qualifies as a second strike.

The 2010 dismissal of *New York State Supreme Court* does not qualify as a strike because that "mixed dismissal" included a determination not to exercise supplemental jurisdiction over a state-law claim against the defendant law firm. *See id.* at 255. But Hall has an additional strike from a 2003 dismissal not relied on by the district court below. Accordingly, this Court may either affirm by substituting that 2003 strike for the 2010 dismissal, or remand for the district court to consider whether to substitute that strike in its calculation.

Alternatively, collateral estoppel precludes Hall from relitigating here the question of whether he has three strikes. In arguing that the district court erred in relying on the 2013 three-strikes ruling, Hall mistakenly relies on cases holding that a court dismissing a case may not preemptively label that dismissal as a strike before the question has arisen, i.e., in a fourth or later case where the plaintiff seeks IFP status. By contrast, the court that issued the 2013 three-strikes ruling had before it the question whether three earlier dismissals qualified as strikes. And when the court properly reached and decided that question, Hall was

barred by collateral estoppel from contesting that finding in later cases including this one.

## ARGUMENT

### THE DISTRICT COURT CORRECTLY DENIED IFP STATUS AND DISMISSED THE COMPLAINT UNDER 28 U.S.C. § 1915(G)

**A. Hall Has Three Strikes.**

Because Hall has at least three strikes under § 1915(g), the district court was correct to deny him IFP status and dismiss the complaint.[1]

> **1. The district court's 2007 dismissal of *Hall v. City of New York* and this Court's dismissal of the appeal in the same case count as two strikes.**

Hall concedes (Br. at 7) that this Court's dismissal of his appeal as frivolous in *Hall v. City of New York* counts as a strike. *See Griffin v. Carnes*, 72 F.4th 16, 20 (2d Cir. 2023) (per curiam). As for the district court's dismissal of the complaint in that same case, the determination

---

[1] The district court made clear that it was relying on the same three strikes as the 2013 three-strikes ruling to deny Hall IFP status here. (*See* A. 15 (citing 2013 three-strikes ruling); A. 127-128 (finding three strikes based on dismissals identified in show-cause order); A. 122 (show-cause order).) Hall is thus mistaken to assert that the court failed to identify any relevant dismissals. *See* Br. for Appellant (Br.) at 21-24. Indeed, this Court easily ascertained the relevant dismissals in its order appointing pro bono counsel for this appeal. *See* ECF No. 69.

that *Heck* warranted dismissal does not provide the basis for a strike because the direct appeal of Hall's conviction remained pending. *See Cotton*, 96 F.4th at 258. But the court provided alternate, qualifying grounds for dismissing all claims against each defendant. Accordingly, the district court's dismissal of the complaint in *City of New York* qualifies as a strike as well. *See Griffin*, 72 F.4th at 19.

First, the court dismissed Hall's claims against the state judge based on absolute judicial immunity. (A. 66-67.) "Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g)" and supports a strike under this Court's precedents. *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011); *see* Br. at 36 (conceding this result under this Court's precedents).

Second, the court dismissed Hall's claims against the county prosecutor based on absolute prosecutorial immunity. (A. 67-68.) Like dismissals based on absolute judicial immunity, "any action against a prosecutor for initiating a prosecution or for presenting the prosecution's case that is dismissed *sua sponte* on the ground of absolute prosecutorial immunity is deemed 'frivolous' for purposes of 28 U.S.C. § 1915(g)." *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (per curiam).

10

Third, the court dismissed Hall's claims against the City because the complaint failed to allege facts adequate to support a claim for municipal liability. (A. 68.) A dismissal for "fail[ure] to state a claim upon which relief may be granted" is a strike under the plain text of § 1915(g). *See* 28 U.S.C. § 1915(g); *Burns v. Schell*, No. 20-3883, 2023 WL 1113215, at *2 (2d Cir. Jan. 31, 2023) (summary order). Each of these three grounds supports a strike under § 1915(g), and together they fully disposed of Hall's claims. *See Griffin*, 72 F.4th at 19.

Hall is wrong to argue that this Court may not rely on these non-*Heck* grounds to find a strike. According to Hall, the dismissing court should not have reached the merits of Hall's claims after rejecting them on *Heck* grounds. Br. at 34-36. But a court applying § 1915(g) may not "second-guess the dismissing court's determinations." *Kaminski v. Kennedy*, No. 22-2084, 2024 WL 1664771, at *2 (2d Cir. Apr. 18, 2024) (summary order) (quotation marks omitted). In any event, this Court has never held that *Heck*'s procedural bar implicates Article III jurisdiction, *see Greathouse v. Meddaugh*, No. 22-2834, 2023 WL 5439456, at *3 (2d Cir. Aug. 24, 2023) (summary order), or that *Heck* must be addressed before other merits issues. To the contrary, this Court has affirmed the

11

dismissal of claims on the merits without resolving whether the claims would independently fail on *Heck* grounds. *See, e.g.*, *Teichmann v. New York*, 769 F.3d 821, 827 (2d Cir. 2014) (per curiam). Under the circumstances, the dismissing court appropriately ruled on alternate grounds.

> **2. The 2010 dismissal of *Hall v. New York State Supreme Court* does not qualify as a strike, but Hall has an additional strike from a 2003 dismissal not considered by the district court.**

OAG agrees that the 2010 dismissal of *Hall v. New York State Supreme Court* does not qualify as a strike because it is a "mixed dismissal" that rejected "some claims for failure to state a claim and others for lack of subject matter jurisdiction." *See Escalera v. Samaritan Vill.*, 938 F.3d 380, 383 (2d Cir. 2019) (per curiam). Specifically, the court's denial of supplemental jurisdiction over Hall's state-law claim against the law firm (A. 119) renders the decision a "mixed dismissal" that does not count as a strike. *See Cotton*, 96 F.4th at 255. There is thus no need for this Court to address whether the dismissal of Hall's claims against the

state court under the *Rooker-Feldman* doctrine and the Eleventh Amendment otherwise supported a strike.[2]

However, the decision below may still be affirmed because Hall has an additional strike from the dismissal of *Hall v. Pataki*, which Hall commenced in 2000 while incarcerated at Gouverneur Correctional Facility. *See* Compl., *Pataki*, No. 00-cv-781 (N.D.N.Y. filed May 22, 2000) ("*Pataki* Compl."), Dkt. No. 1 (reproduced in Addendum at 1-9). Although the district court did not rely on the dismissal in *Pataki*, this Court may affirm on any ground supported by the record and judicially noticeable materials. *See AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003).

In *Pataki*, the court dismissed the complaint under Federal Rule of Civil Procedure 12(c), because the complaint's allegations were "wholly conclusory" and "failed to state a claim upon which relief can be granted." *Pataki* R&R at 4. Such a dismissal for failure to state a claim qualifies as

---

[2] This Court has not addressed whether dismissals based on *Rooker-Feldman* or Eleventh Amendment immunity qualify as strikes. *See Kaminski*, 2024 WL 1664771, at *2 & n.3; *Cannon v. New York State Dep't of Corr. & Cmty. Supervision*, No. 23-cv-0837, 2023 WL 2898665, at *3 (S.D.N.Y. Apr. 10, 2023).

a strike under § 1915(g).[3] *See Kaminski*, 2024 WL 1664771, at \*2 & n.3; *Clay v. Lee*, 828 F. App'x 24, 25-26 (2d Cir. 2020); *see also Blakely v. Wards*, 738 F.3d 607, 615 (4th Cir. 2013) (Rule 12(c) dismissals may qualify as strikes); *Conseillant v. William*, No. 23-cv-5816, 2023 WL 5237615, at \*1 n.3 (S.D.N.Y. Aug. 14, 2023) (same).

Although the court in *Pataki* also found that Hall's claims failed based on Eleventh Amendment and other immunity grounds, *Pataki* R&R at 5-7, the court's holding that the complaint failed to state a claim "was a fully sufficient condition for dismissal of all claims" and thus qualifies the dismissal as a strike under § 1915(g), *see Griffin*, 72 F.4th at 19 (quotation marks omitted).

In the proceeding that resulted in the 2013 three-strikes ruling, Hall argued that he was not the plaintiff in *Pataki* and that the case was

---

[3] While this Court has not addressed whether all Rule 12(b)(6) dismissals necessarily qualify as strikes, *Griffin*, 72 F.4th at 20 n.1, it has recognized that § 1915(g)'s reference to dismissals for failure to state a claim is an "explicit reference" to Rule 12(b)(6), *Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007). And courts routinely count Rule 12(b)(6) dismissals as strikes. *See, e.g.*, *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 597 (2020); *Griffin*, 72 F.4th at 19, 21. The Rule 12(c) standard is "identical" to the Rule 12(b)(6) standard. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

14

brought by a different person with the same name. (*See* A. 122 n.2.) Yet the complaint in *Pataki* lists the Department Identification Number (DIN) associated with Hall's previous term of commitment, as confirmed by publicly available records. *See Pataki* Compl. at 1 (listing DIN 72-A-0240); DOCCS, *Incarcerated Lookup* (search Last Name: Hall, First Name: Ralph, DIN: 05-A-5367), https://nysdoccslookup.doccs.ny.gov/ (last visited Aug. 4, 2025) (listing DIN 72-A-0240 as associated with Hall). Accordingly, there is no doubt that Hall was the plaintiff in *Pataki*.

For these reasons, this Court should affirm the district court's determination that Hall has three strikes. At minimum, the Court should remand for the district court to consider in the first instance whether the 2003 dismissal in *Pataki* qualifies as a strike.

## B. Alternatively, Collateral Estoppel Precludes Hall from Relitigating Whether He Has Three Strikes.

This Court may affirm on the alternate ground that the 2013 three-strikes ruling collaterally estops Hall from relitigating the issue here. Collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate

15

the issue; and (4) the resolution of the issue was necessary to support a valid judgment on the merits." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quotation marks omitted). The doctrine applies to a court's determination that a plaintiff has three strikes under 28 U.S.C. § 1915(g).[4] *See Shepherd*, 2021 WL 1842159, at *3; *see also Hillis v. All Personal Liab. Carriers-Underwriters of Land*, No. 23-47, 2023 WL 4004488, at *1 (2d Cir. 2023) (summary order) (remanding for determination whether collateral estoppel applied to bar relitigation of three-strikes finding); *Andrew v. Cervantes*, 493 F.3d 1047, 1057 n.11 (9th Cir. 2007) (collateral estoppel applies to application of imminent-threat exception).

Each element of collateral estoppel is met here. In the case resulting in the 2013 three-strikes ruling, the court identified three dismissals that potentially qualified as strikes, ordered Hall to show cause why the

---

[4] Although a dismissal under 28 U.S.C. § 1915(g) is not "on the merits," collateral estoppel also precludes relitigation of issues underlying dismissals on jurisdictional and other threshold grounds. *See Stagg, P.C. v. U.S. Department of State*, 983 F.3d 589, 605 n.9 (2d Cir. 2020); *Shepherd v. Keyser*, No. 21-cv-2363, 2021 WL 1842159, at *3 (S.D.N.Y. May 7, 2021); *see also* 18A Charles Alan Wright et al., *Federal Practice & Procedure* §§ 4435-4436 (3d ed. May 2025 update) (Westlaw) (collateral estoppel applies to issues decided in connection with dismissals based on jurisdiction, venue, or party joinder).

dismissals should not be counted as strikes, considered and rejected Hall's arguments, and dismissed the case under § 1915(g). (A. 122-123, 127-128.) Hall did not appeal, and it is irrelevant for purposes of collateral estoppel that the 2013 three-strikes ruling incorrectly counted one prior dismissal as a strike. *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999); *Laaman v. United States*, 973 F.2d 107, 112 (2d Cir. 1992). Under the circumstances, Hall is collaterally estopped from relitigating the three-strikes determination, and this Court may affirm on that basis.[5] *See Shepherd*, 2021 WL 1842159, at *3.

Hall is wrong to argue, contrary to these principles, that the district court was precluded from relying on the 2013 three-strikes ruling. *See* Br. at 17-24. Nothing in the text of § 1915(g) prevents a district court from

---

[5] An exception to collateral estoppel applies where there have been "major changes in the law" that modify the "controlling legal principles." *Montana v. United States*, 440 U.S. 147, 161 (1979) (quotation marks omitted); *see Faulkner v. National Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005). This Court's decision in *Escalera* holding that mixed dismissals do not qualify as strikes did not represent such a change in law because that holding followed directly from the plain text of § 1915(g) and the prevailing view of other circuits. *See* 938 F.3d at 381-82. Nor does this Court's decision in *Cotton* foreclose application of collateral estoppel because the only dismissal potentially affected by that decision (the 2007 district court dismissal of *City of New York*) qualifies as a strike on unrelated grounds (see *supra* at 9-12).

relying on a prior court's three-strikes determination in applying the statute, and Hall cites no cases that so hold. Hall mistakenly relies (Br. at 17-20) on cases in which courts simultaneously dismissed an action and issued a strike for purposes of future proceedings—even though the strike status of the dismissal was not yet in issue. *See, e.g.*, *Pitts v. South Carolina*, 65 F.4th 141, 147 (4th Cir. 2023); *Fourstar v. Garden City Grp., Inc.*, 875 F.3d 1147, 1152 (D.C. Cir. 2017); *DeLeon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004) (per curiam). Here, by contrast, the 2013 three-strikes ruling on which the district court relied had denied Hall IFP status in a case that Hall commenced *after* collecting three qualifying dismissals. (A. 127-128.) At that time, the question whether Hall had three strikes was properly before the court and had an immediate "'practical consequence'": the denial of IFP status. *See DeLeon*, 361 F.3d at 95 (quoting *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999)).

Nor did the 2013 three-strikes ruling purport to "deny future IFP applications brought before future courts" (Br. at 17). Having found three strikes, it correctly concluded that Hall was barred from filing future actions IFP while in custody unless he could establish an "imminent threat of serious physical injury." (*See* A. 128.) This Court has previously

approved of similar language in orders denying IFP status. *See Akassy v. Hardy*, 887 F.3d 91, 93, 98 (2d Cir. 2018) (affirming dismissal of action "without prejudice to [plaintiff's] right to file new actions with payment of the filing fees").[6] And this aspect of the 2013 three-strikes ruling "merely replicates a bar imposed automatically by the statute." *See Lucien v. Jockisch*, 133 F.3d 464, 469 (7th Cir. 1998).

---

[6] *See also Ortiz v. McBride*, 380 F.3d 649, 658 n.7 (2d Cir. 2004) ("A prisoner who accrues three strikes is barred from proceeding *in forma pauperis* in future suits . . . ."); *Daker v. Jackson*, 942 F.3d 1252, 1256 n.4 (11th Cir. 2019) (per curiam) (discussing order directing clerk to list plaintiff "as a 'three-striker' for purposes of future matters").

## CONCLUSION

The judgment of the district court should be affirmed.

Dated:  New York, New York
        August 4, 2025

Respectfully submitted,

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Amicus Curiae


By:  /s/ Stephen J. Yanni
STEPHEN J. YANNI
Assistant Solicitor General

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
STEPHEN J. YANNI
 *Assistant Solicitor General*
     *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-6184
Stephen.Yanni@ag.ny.gov

# Addendum

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT
LAWRENCE K. BAERMAN-C...

MAY 2 2 2000

RECEIVED-UTICA

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

MAY 2 2 2000

AT_____O'CLOCK___M
LAWRENCE K. BAERMAN, Clerk
UTICA

_RALPH HALL_, MPS, MSW   **Plaintiff(s)**

vs.

_PATAKI;_ Goo.
_GOORD;_ Comm.   **Defendant(s)**

)
)
)
)
)
)
)
)
)
)
)
)

**INMATE**
**CIVIL**
**RIGHTS**
**COMPLAINT**
**PURSUANT TO**
**42 U.S.C. § 1983**

**Civil Case No.: 6:**
**6:00-CV-0781**

Plaintiff(s) in the above-captioned action, allege(s) as follows:

### JURISDICTION

1.     This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

### PARTIES

2.     Plaintiff:   _RALPH HALL_ #72A0240

Address:   _Scotch Settlement Road (P.O. Box 480)_
_Gouverneur Correctional Facility_
_Gouverneur, New York 13642_

Additional Plaintiffs may be added on a separate sheet of paper.

3.   a.   Defendant:   _PATAKI (individually and official capacity)_
Official Position:   _N.Y.S. Governor_

Address:   _N.Y.S. Capitol_
_Albany, New York 12224_

**JUDGE MORDUE** Form E (2) (a) . 1

**MAGISTRATE JUDGE SHARPE**

**ADD1**

b.   **Defendant:** GOORD; (individually and official capacity)
    **Official Position:** N.Y.S. Commissioner Corrections (D.O.C.S.)

    **Address:** N.Y.S. Office Building, Campus
    Albany, New York 12224

c.   **Defendant:** ~~scribbled out~~
    **Official Position:** ~~scribbled out~~

    **Address:** ~~scribbled out~~

Additional Defendants may be added on a separate sheet of paper.

4.   ## PLACE OF PRESENT CONFINEMENT

a.   Is there a prisoner grievance procedure at this facility?

    (✓) Yes      ( ) No

b.   If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?

    ( ) Yes      (✓) No

    If your answer to 4(b) is YES:

    (i)    What steps did you take?

        N/A

    (ii)    What was the **final** result of your grievance?

        N/A

Form E (2) (a) . 2

**ADD2**

If your answer to 4(b) is NO:

Why did you choose to not present the facts relating to your complaint in the prison's grievance program?

*The prisoner grievance is not adequate nor has power to address Constitutional issues.*

c. If there is no grievance procedure in your institution, did you complain to prison authorities about the facts alleged in your complaint?

( ) Yes          (✓) No

If your answer to 4(c) is YES:

(i) What steps did you take?

*N/A*

(ii) What was the **final** result regarding your complaint?

*N/A*

If your answer to 4(c) is NO:

Why did you choose to not complain about the facts relating to your complaint in such prison?

*I believe the issue here is unconstitutional, demanding of federal interest via 42 USC 1983 forum.*

5.                    **PREVIOUS LAWSUITS**

a. Have you ever filed any other lawsuits in any state and federal court relating to your imprisonment?

(✓) Yes          ( ) No

b. If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page.

Form E (2) (a) . 3

**ADD3**

For **EACH** such lawsuit, provide the following information:

    i.    Parties to previous lawsuit:

        Plaintiffs:

        RALPH HALL #72A0240

        Defendants:

        N.Y.S. DIVISION OF PAROLE, ETC., ET. AL

    ii.    Court (if federal court, name District; if state court, name County:

        S.D.N.Y.

    iii.    Docket number:   99CIV11317 — 28USC 2254
                                  00CIV0591 — 42USC 1983

    iv.    Name of Judge to whom case was assigned:
        R.M. BERMAN — 99CIV11317
        T.P. GRIESA — 00CIV0591 — 00-53 (2.Cir.2000)

    v.    Disposition (dismissed? on appeal? still pending?)

        99CIV11317 (PENDING); 00-53 (PENDING ON APPEAL)

    vi.    Approximate date of filing prior lawsuit:

        (99CIV11317) Oct 4, 1999; (00CIV0591) May 29, 1999

    vii.    Approximate date of disposition:

        99CIV11317 (PENDING); 00-53 (TRIAL Scheduled week of 6/19/2000

6.                              **FACTS**

    Set forth the facts of your case which substantiate your claim of violation of your civil and/or Constitutional rights. List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.** (You may use additional sheets as necessary.)

Named defendants, acting individually and collectively have proposed a bill and submitted it to the State Legislature for mandatory collection of DNA from all State prisoners. The proposed submission have not been made into law and have not been filed "as a State policy with the Secretary of State. However, the collection of DNA evidence to expand the State's DNA databank is "currently" required from State prisoners under

Form E (2) (a) . 4

**ADD4**

threat of actual force & DNA is not provided voluntarily. Contrary to U.S.C.A. Amends. 4, 5, 8, "Protections against prohibiting and violating due process, compulsory process, self incrimination and cruel and unusual punishment, the defendants have implemented this unlawful, repressive and dehumanizing measure under color of State law (e.g. "autocracy") (SEE: ATTACHED EXHIBIT "A")("B")

7.                    **CAUSES OF ACTION**

**Note: You must clearly state each cause of action you assert in this lawsuit.**

**FIRST CAUSE OF ACTION**

Defendants have deprived plaintiff's of their rights to the preservation of privacy and the possession of one's own body fluids. The aggressive taking of and compelling of compliance is repressive, dehumanizing and serves no need or relation to the imposed sentence of conviction. (Liscio v. Warren, 901 F.2d. at 276-77)(deliberate indifference)

**SECOND CAUSE OF ACTION**

Defendants, individually and collectively, by their agents, either correctional officers or medical staff, have initiated an "ex post facto" usage of policy that is devoid of State filing mandate in violation of procedural proscription under state law. (Defendant's had requisite knowledge of a substantial risk to realizing alleged violations)

**THIRD CAUSE OF ACTION**

Defendants have implemented a policy of repression, oppression and dehumanization, conflicting with the established imposition of criminal justice and punishments received from Courts of law. Human Rights have been held to be paramount where compared to rights of the imprisoned. (Archer v. Dutcher, 733 F.2d. 14, 17 (2nd. Cir. 1984)(deliberate indifference)(objective context)(See attached Memorandum)

**Form E (2) (a) . 5**

**ADD5**

8. Plaintiff(s) demand(s) a trial by

(Jury) -or- Court

(Circle _only_ one).

9. PRAYER FOR RELIEF

WHEREFORE, plaintiff(s) request(s) that this Court grant **the following relief:**

_Preliminary and Permanent Injunctions; Declaratory Judgments; nominal, compensatory and punitive, examplary damages in the amount of ten thousand Dollars, per named defendants. Cease and desist effective and prospective retaliation, against plaintiff for exercising his options to redress autocratic practices._
_* (assignment of PRO BONO Counsel)_

I declare under penalty of perjury that the foregoing is **true and correct.**

DATED: _May 8, 2000_

_Ralph Hall_ #73A0240
Signature of Plaintiff(s)
(all Plaintiffs must sign)

Form E (2) (a) . 6

What others are s...

*Hall v. Pataki, Good*
*42 USC 1983*
*(Exhibit "A")*

Documented proof of
defendants proposed
legislative action that (is)
was already in effect,
devoid of every legal
prerequisite, to include
filing with the Secretary
of State. Said act
is currently being
implemented under the
color of law and enforced
with the force and effect
of law, upon all state
prisoners, to include
and without exception,
your plaintiff, an "alleged"
parole violator, (USCA, Amend
4, 5, 8, 14)

Gouverneur, New York
May 15, 2000
Elijah Hall, MPS, MSW

## Justice can bank on DNA

**From the New York *Daily News* of February 25**

Giving New York a firm push into the future, Gov. Pataki has just proposed sweeping revisions to the state's penal code to allow for and encourage the use of DNA evidence. His ideas could be considered as visionary as DNA technology itself. And that, unfortunately, presents a problem. There are too many people, including civil libertarians and political hacks, for whom change is anathema.

The bills Pataki has submitted to the Legislature are two-fold. One would eliminate the five-year statute of limitations on serious violent felonies, including rape, manslaughter and assault. As the governor rightly noted, "There is no statute of limitations on anguish. ... If my bill becomes law, there will be no statute of limitations on justice here in New York."

How does this tie into DNA? Thanks to DNA testing, a serial rapist, for example, could be linked to all his prior assaults. Whether that crime occurred 10 days ago or 10 years ago should not be a factor in his prosecution.

Which brings us to collection of DNA evidence. Pataki's second proposal is to expand the state's DNA databank and require all felons, plus Class A and Class B misdemeanor offenders, to provide DNA samples — upon conviction. In the same way that police take fingerprints in such cases.

Who could be opposed to that? The usual preservation-of-"privacy" suspects. Norman Siegel, executive director of the New York Civil Liberties Union, is against expanding the DNA databank and apparently fears the end of civilization as we know it. Here's the quoted reaction: "On the horizon is the collection of DNA from those presumed innocent, and perhaps even infants. We say no to New York's Brave New World."

Let's deal with that when it happens, shall we?

In the meantime, the government has a moral obligation to protect the interests of society and to pursue justice. DNA evidence is indisputable. And it can be used to prove not only guilt, but innocence. As Pataki put it, "DNA is a scientific miracle for human justice. It shines the light of irrefutable truth into our courtrooms."

That also addresses the concern about eliminating the statutes of limitations. The concept is rooted in the assumption that the ability of the accused to present an effective defense is diminished with the passage of time. However, DNA and its irrefutable truth are the strongest defense possible.

Pataki's proposed legislation, deemed the most aggressive of its type in the nation, deserves approval.

It would be a pity if groundless fears undermined the best chance society has ever had to ensure justice — for the guilty, the innocent and the victims of crime. ❑

*April 2000*

**DOGS TODAY**

**ADD7**

United States District Court
Northern District Of New York

Ralph Hall, plaintiff,
— against —
Pataki, N.Y.S. Governor
Goord, N.Y.S. D.O.C.S. Comm.
~~~~~~~~~~~~~~~~~~~~~~,
Respondents

Supplemental
Memorandum Of
Law

Civil No. _____

## Supplemental Memorandum Of Law

Ralph Hall, the plaintiff above captioned, contends that the policy imposed by the alleged Respondents to Collect Body Fluids (DNA) by force or voluntarily, is a policy or unlawful act which should be declared unconstitutional for failure to meet the requisite filing mandate with the Secretary of State. (e.g. People rel Kinard v. N.Y.S.D.O.P., 662 NYS 2d 346 (1997).)

Further contention is that Respondents acts claimed, advocate no rights, human and/or civil, concerning prisoners in State facilities. The deliberate indifference is believed deserving of the "objective standard" held at Farmer v. Brennan, 114 S. Ct. at 1981 (1994). Custodial officials are not exempt from rule of law as applied to convicted entitles' due process and freedom from cruel and unusual punishments, Estelle v. Gamble, 439 U.S. 97, 104-05 (1976).

Where plaintiff, a N.Y.S. parolee is charged with parole violation and currently litigating at separate federal forums. It is believed that his prisoner status should not be made to relinquish due process or acquiesce in the matter of named respondents alleged autocratic purposes.

Acting or failing to act with deliberate indifference to a substantial risk, (compelled to relinquish the right against self incrimination, personal property, human rights), or harm to a prisoner is the equivalent of reckless disregard of risk. (e.g. Farmer, Supra at 1978. Proof of intent is not required, although Respondent adamantly espouses his profiling of every prisoner to be an ongoing threat to society at-large. Thus, the need for prisoner's DNA collected in the interest of security, civil or human rights not withstanding. Likewise, the procedural rule concerning Secretary of State, regarding established rules for the promulgation of laws. "Qualified immunity does not protect those who are incompetent or those who knowingly violate the law" (e.g. Hunter v. Bryant, 502 US at 229 (1991).

The claims and causes of action set forth by 42 USC 1983 must be resolved as a matter of law, and that Pro se litigant be treated with same respect as person represented by counsel.

5/9/2000

Ralph O'Hall, MPS, MSW
ADDR:
Plaintiff. Pro-Se



U.S. DISTRICT COURT
**N.D. OF N.Y.**
**FILED**

FEB 1 9 2003

LAWRENCE K. BAERMAN, **CLERK**
ALBANY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

RALPH HALL,

                  Plaintiff,

      v.

GOVERNOR PATAKI and COMMISSIONER
GOORD, both Individually and in their official
capacities,

                Defendants.

No. 00-CV-781
(NAM/DRH)

---

**APPEARANCES:**

RALPH HALL
Plaintiff Pro Se
c/o S.A.E., Inc.
433 West 126th Street
#4A
New York, New York 10027

HON. ELIOT SPITZER
New York State Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**OF COUNSEL:**

SENTA B. SIUDA, ESQ.
Assistant Attorney General

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Ralph Hall ("Hall"), formerly an inmate in the custody of the New York

State Department of Correctional Services (DOCS), brought this action against two

defendants, New York Governor Pataki and DOCS Commissioner Goord, pursuant to 42

U.S.C. § 1983.  Compl. (Docket No. 1).  Hall contends that a bill to collect deoxyribonucleic

acid (DNA) by force from all state prisoners violates his rights under the Fourth, Fifth, Eighth

and Fourteenth Amendments.  Hall seeks declaratory and injunctive relief as well as

compensatory and punitive damages.  Presently pending is defendants' motion for a

judgment on the pleadings pursuant to Fed R. Civ. P. 12(c).  Docket No. 37.[2]  For the

reasons which follow, it is recommended that defendants' motion be granted.

### I. Background

The facts as set forth in the complaint are assumed to be true for purposes of this

motion.  See Section II(A) infra.

Defendants proposed a bill for collecting DNA samples from all state prisoners.  Compl.

at ¶ 6.  The bill required all state prisoners to provide DNA samples.  Id. at ¶ 6 & Ex. A.

This bill was not enacted into law.  Id. at ¶ 6.  The collection of DNA evidence is currently

---

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2]Hall contends that filing a notice of motion (Docket No. 37) and attaching a
memorandum of law (Docket No. 38) is insufficient to file a motion for judgment on the
pleadings.  Pl. Reply (Docket No. 39) at ¶¶ 6, 8.  This contention is incorrect.  The motion
required a memorandum of law, see N.D.N.Y.L.R. 7.1(a), but not an affidavit, see
N.D.N.Y.L.R. 7.1(a)(2)(B).  Defendants' motion papers are sufficient and Hall's contention
must be rejected.

2

required from state prisoners including Hall,[3] an alleged parole violator, under the threat of
actual force if an inmate does not provide DNA voluntarily. Id. at ¶ 6 & Ex. A. This action
followed.

## II. Discussion

### A. Standard on Motion for Judgment on the Pleadings

"The standard for granting a [Fed. R. Civ. P.] 12(c) motion for judgment on the pleadings
is identical to that of a [Fed. R. Civ. P.] 12(b)(6) motion for failure to state a claim." Patel v.
Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). Additionally,
subject matter jurisdiction may also be raised in a motion pursuant to Fed. R. Civ. P. 12(c).
Alonzo v. Chase Manhattan Bank, N.A., 25 F. Supp. 2d 455, 457 (S.D.N.Y. 1998) (citing
Formula One Motors, Ltd. v. United States, 777 F.2d 822 (2d Cir.1985)). When considering
a motion to dismiss, "a court must accept the allegations contained in the complaint as true,
and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18
F.3d 147, 150 (2d Cir. 1994). Dismissal is only warranted if it appears beyond a reasonable
doubt that the non-moving party can prove no set of facts in support of his or her claim
which would be entitled to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).
In evaluating whether these requirements are met, complaints prepared pro se are held to
less stringent standards than formal pleadings drafted by lawyers. See Estelle v. Gamble,
429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).

---

[3]Hall was incarcerated at a DOCS facility at the time he commenced this action.
Compl. at 1. By November 15, 2000, Hall had been released from incarceration. Docket
No. 26 (notice of change of address).

3

**ADD12**

## B. Conclusory Allegations

Defendants contend that Hall failed to state a claim because his allegations are wholly conclusory.

Conclusory allegations alone are insufficient to overcome a motion to dismiss in a civil rights action. Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987). A review of the complaint shows that Hall has failed to allege that he was required to provide a DNA sample. Nor does Hall allege the specific bill he referred to in the complaint. Attaching an article that revisions to the penal code are planned involving the production of DNA samples is insufficient to satisfy the pleading standard, even for a pro se plaintiff. Hall has failed to state a claim upon which relief can be granted. It is recommended that defendants' motion for a judgment on the pleadings on this ground be granted.

## C. Personal Involvement

In the alternative, defendants contend that Hall failed to allege sufficient personal involvement by either defendant.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). The doctrine of respondeat superior is not a substitute for personal involvement. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Thus, supervisory officials may not be held liable merely because they hold a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Supervisory personnel may be considered "personally involved," however, if they

4

participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation. <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

Hall's complaint makes no allegations about Goord and, thus, Hall failed to allege that Goord had any personal involvement. Hall does allege that Pataki proposed the bill. Therefore, Hall has alleged that Pataki personally participated in the alleged constitutional deprivations. It is recommended that defendants' motion on this ground be granted as to Goord and denied as to Pataki.

### D. Eleventh Amendment

Defendants contend that they are entitled to sovereign immunity and thus cannot be sued in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98 (1984) (citing <u>Hans v. Louisiana</u>, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. <u>Halderman</u>, 465 U.S. at 100.

5

**ADD14**

A suit brought against a person in his or her official capacity must be treated as a suit against the entity represented by that person, provided that the public entity received notice and an opportunity to respond. <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985). In an official capacity action, a governmental entity is liable under § 1983 only when the entity itself is the "moving force" behind the deprivation. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). In other words, "the entity's 'policy or custom' must have played a part in the violation of federal law" for liability to attach. <u>Id.</u> at 166 (citations omitted); <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).

Here, the entity represented in his official capacity by Goord, DOCS cannot be found liable under § 1983 for the acts of which Hall complains. Hall fails to allege that a policy or custom of DOCS contributed in any way to the alleged constitutional deprivations. However, Hall does allege that the entity represented in his official capacity by Pataki, New York State, had a policy to obtain DNA samples from all state prisoners in violation of their constitutional rights which was the "moving force" behind the deprivation. Accordingly, defendants' motion for a judgment on the pleadings on this ground should be granted as to Goord and denied as to Pataki in their respective official capacities.

### E. Qualified Immunity

Qualified immunity protects government officials from civil liability if "it was objectively reasonable for them to believe their acts did not violate . . ." clearly established rights. <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 160 (2d Cir. 2001) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 857 (2d Cir. 1996); <u>see also</u> <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987). In determining whether a right is clearly established, the court should consider "(1) whether the

6

**ADD15**

right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). This does not require that "the very action in question [be] previously . . . held unlawful," Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985), but merely that the "unlawfulness must be apparent." Anderson, 483 U.S. at 639.

First, there is no allegation in the complaint that Hall was ever required to provide a DNA sample as would be necessary to allege a violation of a constitutional right. In the absence of a deprivation, defendants could not have reasonably believed that their actions would violate Hall's rights. Second, it was not a clearly established right that a government official could not propose a bill which might require all state prisoners to provide DNA samples. Even assuming a clearly established right existed, a reasonable official in the position of either defendant would not have known that his alleged actions were unlawful. It is recommended that defendants' motion on this ground be granted as to both defendants.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for a judgment on the pleadings (Docket No. 37) be **GRANTED** and that judgment be entered in favor of both defendants on all claims; and

**IT IS ORDERED** that the Clerk of the Court serve a copy of this Report-

7

**ADD16**

Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health and

Human Servs. 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),

6(e).

Dated:  February 13, 2003
       Albany, New York

_David R. Homer_
UNITED STATES MAGISTRATE JUDGE

8

**ADD17**



U.S. DISTRICT COURT—N.D. OF N.Y.

FILED

MAR 1 4 2003

AT _____ o'clock _____
Lawrence K. Baerman, Clerk - Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

————————————————————

RALPH HALL,

                      Plaintiff,

           v.                          9:00-CV-781

GOVERNOR PATAKI and COMMISSIONER
GOORD, both Individually and in their official
capacities,

                      Defendants.

————————————————————

APPEARANCES:                    OF COUNSEL:

RALPH HALL
Plaintiff Pro Se
c/o S.A.E., Inc.
433 West 126th Street
#4A
New York, New York 10027

HON. ELIOT SPITZER              SENTA B. SIUDA, ESQ.
New York State Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

NORMAN A. MORDUE, DISTRICT JUDGE

<u>ORDER</u>

        The above matter comes to me following a Report-Recommendation by Magistrate

Judge David R. Homer, duly filed on the 19th day of February, 2002.  Following ten days

from the service thereof, the Clerk has sent me the file, including any and all objections filed

by the parties herein.

        After careful review of all of the papers herein, including the Magistrate Judge's

**ADD18**

Report-Recommendation, and no objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby approved.

2. The Clerk of the Court shall serve a copy of this Order upon all parties and the

Magistrate Judge assigned to this case.

IT IS SO ORDERED.


Dated:  March 14, 2003
       Syracuse, New York

                     Norman A. Mordue
                     U.S. District Judge

2